UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

IN RE:                                     )
                                           )
MILLER BROTHERS LUMBER                     )    Case No. B-11-51405
COMPANY, INC.                              )    Chapter 11
                                           )
                Debtor.                    )
_____)

**MEMORANDUM OPINION**

At issue is whether American Bank, FSB, has a properly perfected security interest in certain equipment of Miller Brothers Lumber Company (the "Debtor") despite the Bank's failure to file a UCC-3 continuation statement when the original financing statement expired post-petition.  The Court held a hearing in this matter on April 11, 2012, in Winston-Salem, North Carolina, at which time the Court took the matter under advisement.

**I. JURISDICTION**

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I), which this Court has the jurisdiction to hear and determine.  Pursuant to the analysis in Stern v. Marshall, -- U.S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

**II. FACTS**

On October 25, 2006, the Debtor, as lessee, entered into a Master Lease with American Bank, as lessor.  On the same date, the Debtor also executed a "Schedule to Master Lease" with

1

American Bank (the "Schedule"), which listed the items of equipment subject to the Master Lease. These items included one Newman Planer, one Automated Lumber Handling Tilt Hoist & Irving Moore Chain Deck, and one Hydraulic Stacker. The Schedule provides the Debtor-Lessee with an option to purchase the equipment listed therein at the expiration of the lease for $1.00. On October 27, 2006, American Bank filed a UCC-1 Financing Statement with the North Carolina Secretary of State.

On September 9, 2011, the Debtor filed a voluntary Chapter 11 bankruptcy petition. On December 19, 2011, American Bank filed a proof of claim as a secured creditor in the amount of $45,238.15. On February 10, 2012, American Bank filed a Motion for Adequate Protection and to Modify the Stay, seeking to terminate or modify the automatic stay so that American Bank could obtain possession of its property pursuant to its purported Master Lease. On February 27, 2012, the Debtor filed a Response and Objection to American Bank's Motion, arguing that American Bank was not entitled to repossess its collateral because the perfection of the Bank's security interest has lapsed through its failure to file a UCC-3 Continuation Statement before the original filing statement expired on October 27, 2011.

### III. ANALYSIS

A threshold issue in this case is whether the transaction involved is a lease or a security interest disguised as a lease. If it is a security interest disguised as a lease, then it will be governed by N.C. Gen. Stat. § 25–9 (Article 9). However, if it is a lease, then it will be governed by N.C. Gen. Stat. § 25–2A (Article 2A). See N.C. Gen. Stat. § 25–2A–103 cmt. j (1995). The parties do not dispute that the Master Lease should be treated as a security interest pursuant to North Carolina Gen. Stat. § 25-1-203. Section 25-1-203 provides:

>  (b) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and:
>
>  (1) The original term of the lease is equal to or greater than the remaining economic life of the goods;
>
>  (2) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods;
>
>  (3) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement; or
>
>  (4) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

The Master Lease agreement provides that the Debtor will pay American Bank for the use of the equipment, and does not allow the Debtor to unilaterally terminate the lease prior to the expiration of the term period. Critically, the lease also provides the Debtor with an option to purchase the equipment at the expiration of the lease for the nominal additional consideration of $1.00. Therefore, the Master Lease is a security agreement that creates a security interest. N.C. Gen. Stat. § 25-1-201(35).

A security interest in equipment is perfected by filing a financing statement with the North Carolina Secretary of State. N.C. Gen. Stat. §§ 25-9-312; 25-9-501(a). A filed financing statement is effective for a period of five years after the date of filing. N.C. Gen. Stat. § 25-9-515(a). The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless before the lapse a continuation statement is filed. Upon a lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected. N.C. Gen. Stat. § 25-9-515(c).

At issue is whether American Bank has a properly perfected security interest in certain equipment of the Debtor, despite American Bank's failure to file a UCC-3 continuation statement before the original financing statement expired post-petition on October 27, 2011. American Bank argues that because it was perfected as of the Debtor's petition date, its financing statement did not lapse on the expiration of five years following the original filing. In fact, American Bank goes so far as to claim "the tolling provision is irrelevant in the instant matter" because its perfected status was, in essence, fixed as of the petition date.[1] Mem. In Support of Mot. For Adequate Protection & to Modify Stay, p. 8. Because North Carolina law determines the validity and priority of American Bank's lien, the court must determine whether tolling the time to continue perfection of the Bank's claim is consistent with state goals of notice to other creditors. American Bank's position ignores the clear language of N.C. Gen. Stat. § 25-9-515(c), which provides that "the effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed . . . ." Although under former Section 9-403(2) lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding, new subsection (c) deletes the former tolling

---

[1] American Bank cites substantial case law, allegedly in support of the proposition that the automatic stay fixes and protects priorities as they exist on the petition date. The Court is not convinced by this authority. Isaacs v. Hobbs (In re Isaacs), 282 U.S. 734 (1931), for example, considered the jurisdiction of the bankruptcy courts in foreclosure proceedings where state courts also had jurisdiction. Contrary to the position advanced by American Bank, the Supreme Court concluded that state law controlled the valid existence of a lien, while bankruptcy courts had exclusive jurisdiction to determine the validity of liens and method of liquidation. Issacs, 282 U.S. at 738. Similarly, in the case In re Paul, 37 B.R. 342, 436 (Bankr. D. Mass. 1986), the court stressed the preeminence of state law in determining the validity of liens. Although the court concluded that the time for filing a continuation statement is tolled by the automatic stay, it also noted that its holding was based on state law and Massachusetts legislators' goals of notice to other creditors. Paul, 37 B.R. at 436.

provision and "imposes a new burden on the secured parties: to be sure that a financing statement does not lapse during the debtor's bankruptcy." N.C. Gen. Stat. § 25-9-515(c) cmt. n.4; 26A N.C. Index 4th Secured Transactions § 107. Thus, parties which fail to file UCC-3 continuation statements will lose their secured status, even when the lapse occurs post-petition. Because American Bank's financing statement expired on October 27, 2011, and no continuation statement was ever filed, its original financing statement is ineffective and its lien on the Debtor's equipment is unperfected. The Debtor, therefore, may avoid American Bank's security interest pursuant to Section 544 of the Bankruptcy Code.

Application of revised N.C. Gen. Stat. § 25-9-515(c) is a matter of first impression in North Carolina courts. The Court's conclusion, however, is consistent with the notice filing system effected by Article 9 of North Carolina's version of the Uniform Commercial Code. Under the old version of Section 25-9-515(c), filing offices–unaware that the tolling provisions of the statute had been tolled by an insolvency proceeding–routinely removed financing statements from the filing records, as if lapse had not been tolled. N.C. Gen. Stat. § 25-9-515(c) cmt. n.4. Post-petition creditors and buyers, consequently, were without notice of pre-existing, priority liens. Revised Section 25-9-515(c), in combination with Sections 362(b)(3) and 546(b) of the Bankruptcy Code, which allow a creditor to file a continuation statement without first obtaining relief from the automatic stay,[2] alters this outcome. Schafer v. Carolina Kitchen &

---

[2] Section 362(b)(3) provides: "The filing of a petition under section 301, 302, or 303 of this title . . . does not operate as a stay . . . (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title."

Bath (In re Orndorff Const., Inc.), 394 B.R. 372, 378 (Bank. M.D.N.C. 2008) (citing In re Cook, 384 B.R. 282, 288–89 (Bankr. N.D. Ala. 2008)); COLLIER ON BANKRUPTCY 546.03[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed) (Sections 362(b)(3) and 546(b) allow the filing of continuation statements so that the creditor may maintain their perfection).  In order to maintain perfected status, North Carolina law requires a creditor to file a continuation statement within five years after the original financing statement was filed, even if the obligee–or in this case, lessee–has filed for relief under Chapter 11 or initiated other state law insolvency proceedings.

## IV. CONCLUSION

Under North Carolina law, the effectiveness of a filed financing statement lapses on the expiration of five years unless, before the lapse, a continuation statement is filed.  Revised Section 25-9-515(c) and the accompanying official comments make clear that lapses are not tolled if the debtor enters bankruptcy or another insolvency proceeding.  American Bank's perfected security interest in the Debtor's equipment therefore lapsed on October 27, 2011.  The Debtor may avoid American Bank's security interest pursuant to its strong arm powers under Section 544.  The Motion for Adequate Protection and to Modify the Stay will be denied.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Rule 9021.