```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


MILLER BROTHERS LUMBER        )
CO., INC.,                    )
                              )
              Debtor,         )
                              )
AMERICAN BANK, FSB,           )
                              )
              Appellant,      )
                              )
       v.                     )    1:12CV720
                              )
MILLER BROTHERS LUMBER        )
CO., INC.,                    )
                              )
              Appellee.       )
```

                    **MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

    Presently before this court is the appeal of American Bank, FSB ("Appellant") from the Order of the Bankruptcy Court (Doc. 3-1) denying its Motion for Adequate Protection and to Modify the Stay. Miller Brothers Lumber Co., Inc. ("Debtor"), the Chapter 11 debtor in possession ("DIP"), contests the appeal. The parties have both briefed the issues on appeal (Docs. 4, 5). This matter is now ripe for resolution, and for the reasons set forth herein, the Bankruptcy Court's Order will be reversed.

I.   **BACKGROUND**

    The facts in this case are undisputed and are taken from the Bankruptcy Court's Memorandum Opinion. (Doc. 6.) On

October 25, 2006, Debtor entered into a Master Lease, as lessee, with Appellant. The Bankruptcy Court found, and the parties agree, that the lease created a security interest pursuant to N.C. Gen. Stat. § 25-1-203. Accordingly, Appellant's interests arising from that lease are governed by Article 9 of the Uniform Commercial Code ("UCC"), as codified at N.C. Gen. Stat. § 25-9-101 et seq.

On October 27, 2006, Appellant filed a UCC-1 Financing Statement with the North Carolina Secretary of State. Under North Carolina law, a financing statement is effective for five years after the date of filing. N.C. Gen. Stat. § 25-9-515(a). A financing statement will lapse after five years unless the creditor has filed a UCC-3 Continuation Statement within six months preceding the date the financing statement is set to expire. N.C. Gen. Stat. § 25-9-515(c)-(e). As of August 2012, Appellant had not filed a continuation statement.

On September 9, 2011, Debtor filed a voluntary petition for bankruptcy protection under Chapter 11. Appellant's financing statement lapsed approximately seven weeks later. On December 19, 2011, Appellant filed a proof of claim as a secured creditor in the amount of $45,238.15. On February 10, 2012, Appellant filed a motion for adequate protection and to modify the automatic stay so that it could take possession of the

-2-

equipment. The Bankruptcy Court denied those requests, and this appeal arises from that Order. The Bankruptcy Court, relying upon N.C. Gen. Stat. § 25-9-515(c), held that failure to file a continuation statement resulted in a lapse post-petition, therefore permitting the debtor to avoid the security interest pursuant to its powers arising under 11 U.S.C. § 544.

## II. STANDARD OF REVIEW

This court has jurisdiction pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001. On appeal, a district court reviews a bankruptcy court's legal determinations de novo and factual determinations for clear error. See Terry v. Meredith (In re Stephen S. Meredith, CPA, P.C.), 527 F.3d 372, 375 (4th Cir. 2008). This court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013.

## III. ANALYSIS

This appeal presents the narrow legal issue of whether a post-petition lapse of a financing statement permits a Chapter 11 debtor in possession ("DIP"), with its powers as a lien creditor under 11 U.S.C. § 544(a)(1), to take priority over a creditor that had a properly perfected security interest as of

-3-

the petition date.[1] The Bankruptcy Court found that it does. However, this court reads N.C. Gen. Stat. § 25-9-515(c) and the related provisions in that Chapter differently. As a result, this court finds that the order of the Bankruptcy Court should be reversed.

As of the commencement of a bankruptcy case, a Chapter 11 DIP acquires nearly identical rights to a Chapter 7 trustee.[2] 11 U.S.C. § 1107(a); Coleman v. Cmty. Trust Bank (In re Coleman), 426 F.3d 719, 725 (4th Cir. 2005). A Chapter 7 trustee may, in turn, avoid the transfer of property to the same extent as a (1) judicial lien creditor at the commencement of the bankruptcy case or (2) a bona fide purchaser of real property. 11 U.S.C. § 544(a)(1) & (3); see Ivester v. Miller, 398 B.R. 408, 415 (M.D.N.C. 2008) ("[A] trustee on the date of the petition enjoys the status of, or may avoid any transfer of property of the debtor that is avoidable by, a hypothetical judicial lien creditor and, as to real property, a hypothetical

---

[1] Neither party disputes the findings of the Bankruptcy Court that: (1) the Master Lease is a disguised security instrument pursuant to N.C. Gen. Stat. § 25-1-203; (2) American Bank held a valid, perfected security interest as of the Petition Date; and (3) the financing statement lapsed post-petition.

[2] This case does not implicate the narrow differences in the respective rights and roles between a trustee and a debtor in possession. See 11 U.S.C. § 1107(a).

-4-

bona fide purchaser."). Of particular significance to this court's analysis is the fact that the DIP's powers as a lien creditor, as set forth in 11 U.S.C. §§ 1107(a) and 544, provide that the DIP's powers and the related judicial lien arise "as of the commencement of the case." 11 U.S.C. § 544(a) & (a)(1). In summary, because the interests do not involve real property, the DIP acquired the status of a lien creditor as of the date of the filing of the bankruptcy petition.

Bankruptcy law "establishes the posture of the trustee as a hypothetical lien claimant. State law, Article 9, specifies the significance of the [DIP's] posture with respect to conflicting security interests." Eldon H. Reiley, 1 Sec. Interests in Pers. Prop. § 20:30 (June, 2000); see Crestar Bank v. Neal (In re Kitchin Equip. Co. of Va.), 960 F.2d 1242, 1245 (4th Cir. 1992). "Thus, if under applicable state law a judgment lien creditor would prevail over an adverse claimant, the trustee in bankruptcy will prevail; if not, he will not." Angeles Real Estate Co. v. Kerxton (In re Constr. Gen., Inc.), 737 F.2d 416, 418 (4th Cir. 1984).

In this case, the parties agree that Appellant held a valid, perfected security interest as of September 9, 2011, the petition date. The parties also agree that the financing statement lapsed on October 27, 2011, due to Appellant's failure

-5-

to file a continuation statement. Their disagreement arises over the legal effect of the post-petition lapse and the priorities resulting from that lapse.

"The validity of a lien is determined by state law." Ivester, 398 B.R. at 416; see also Butner v. United States, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."); In re Price, 562 F.3d 618, 624 (4th Cir. 2009); Tidewater Fin. Co. v. Kenney, 531 F.3d 312, 319 (4th Cir. 2008) ("[S]tate law creates and defines security interests at issue in bankruptcy proceedings if no federal law requires a different result."); In re Franklin Equip. Co., 418 B.R. 176, 210-11 (Bankr. E.D. Va. 2009) ("The legal requirements of a lien, the priority of a lien, and the extent of property interests encumbered by a lien are determined by state law.").

Appellant contends that a creditor's rights are determined and affixed at the time the petition is filed. Thus, according to Appellant, state lien law has little, if any, role to play once the bankruptcy estate has been created. Substantial support for this position exists in the case law. See, e.g., Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 738 (1931); Flebotte v. Northen (In re Fletcher Woods, Inc.), 887 F.2d 1079, 1989 WL 117728, at *3 (4th Cir. Oct. 2, 1989) (unpublished table

-6-

decision) (per curiam); In re Chaseley's Foods, Inc., 726 F.2d 303, 304-06 (7th Cir. 1983); Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 661 (2d Cir. 1940); In re Miller, 444 B.R. 177, 179 (Bankr. E.D. Ark. 2011); In re Paul, 67 B.R. 342, 345 (Bankr. D. Mass. 1986); Robinson v. U.S. Small Bus. Admin. (In re Catamount Dyers, Inc.), 50 B.R. 788, 790 (Bankr. D. Vt. 1985) (collecting cases). On the other hand, Debtor contends there is no universal requirement that the secured status of a creditor be determined as of the petition date, pointing to a number of provisions in the Bankruptcy Code which may affect secured claims at various times during bankruptcy proceedings. "The Bankruptcy Code is not explicit on when the secured nature of a claim is evaluated although the general scheme appears to favor evaluation at the commencement of the case." In re Highland Constr. Mgmt. Servs., LP, Case No. 11-11413-RGM, 2013 WL 3957504, at *7 (Bankr. E.D. Va. July 30, 2013).

The Bankruptcy Court, in reaching its decision, did not reach the question of when the status of a claim had to be decided or when the status of the parties may become "frozen" or "fixed." Instead, the court rested its decision on the DIP's powers under § 544 and the plain language of the first sentence of N.C. Gen. Stat. § 25-9-515(c).

This court does not believe it necessary to determine the applicable time during which the creditors' rights are determined. Nor does this court find it necessary to resolve whether a junior secured creditor would take priority over a senior creditor whose financing statement lapsed post-petition.[3] Instead, under North Carolina law, Appellant's security interest has priority over the DIP's powers as a lien creditor acquired as of the date of the commencement of the action and while the security interest was perfected.[4]

---

[3] In re Wilkinson, No. 10-62223, 2012 WL 1192780 (Bankr. N.D.N.Y. Apr. 10, 2012), did address the effect of a post-petition lapse in a financing statement on the relative priority of two secured creditors. Although the junior secured creditor would have taken priority under state law, the bankruptcy court found "itself in agreement with the majority position, which freezes the parties' position as of the date of filing, believing that to conclude otherwise would upset a fundamental tenet of bankruptcy that property interests are determined as of the petition date." Id. at *4. But see In re Chattanooga Choo-Choo Co., 98 B.R. 792, 799 (Bankr. E.D. Tenn. 1989) ("The court agrees that the better rule is to make a lapsed financing statement ineffective against other financing statements filed before the lapse.").

[4] At least two other courts have reached the same conclusion in considering the UCC as codified by their respective states. See In re Highland Constr. Mgmt. Servs., LP, Case No. 11-11413-RGM, 2013 WL 3957504 (Bankr. E.D. Va. July 30, 2013); Mostoller v. Citicapital Commercial Corp. (In re Stetson & Assocs., Inc.), 330 B.R. 613, 623-24 (Bankr. E.D. Tenn. 2005) ("Because trustees in bankruptcy are armed with the rights of lien creditors under § 544(a) and are not purchasers for value, the fact that three of the [secured creditor's] UCC-1 Financing Statements lapsed during the pendency of the bankruptcy case does not change the priority scheme as between [the Chapter 7 trustee] and the [secured creditor]." (footnote omitted)).

N.C. Gen. Stat. § 25-9-201 provides: "Except as otherwise provided in this Chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." Other provisions in the Chapter, including § 25-9-317 and § 25-9-515, modify the general rule set out in § 25-9-201 through rules regarding perfection, failure to perfect, and lapse. N.C. Gen. Stat. § 25-9-317(a)(2) alters the general scheme by subordinating an unperfected secured creditor to a judicial lien creditor if the judicial lien arises <u>before</u> the security interest is perfected. As a corollary, a judicial lien creditor arising after the perfection of a security interest is subordinate to the secured party unless the applicable statutory provisions provide otherwise.

Central to this court's analysis is N.C. Gen. Stat. § 25-9-515(c) which addresses the effect of a lapsed financing statement. "Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected by the financing statement becomes unperfected, unless the security interest is perfected otherwise." N.C. Gen. Stat. § 25-9-515(c). While that sentence is clear, the last sentence of subsection (c) further provides, "If the security interest . . . becomes unperfected upon lapse, it is deemed

-9-

never to have been perfected as against a purchaser of the collateral for value." Id. Notably, the express language of the statute only addresses the fact that the security interest is deemed never to have been perfected as against a purchaser for value. It does not specifically address, in any fashion, the possible change in priority as to the lapsed perfection of a security interest relative to any junior lien interests. This court finds both the changes made to the statute in 2001 and the Official Comments to N.C. Gen. Stat. § 25-9-515 helpful in interpreting and applying subsection (c).

Statutory language provides the basis for statutory construction. Smith Chapel Baptist Church v. City of Durham, 350 N.C. 805, 810, 517 S.E.2d 874, 878 (1999). "'When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.'" Id. (quoting Lemons v. Old Hickory Council, BSA, 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988)). However, "[w]here doubt as to the meaning of the statutory language exists, our courts will then resort to judicial construction." Rhyne v. K-Mart Corp., 149 N.C. App. 672, 685, 562 S.E.2d 82, 92 (2002). "Portions of the same statute dealing with the same subject matter are 'to be considered and interpreted as a whole, and in such case is the accepted

-10-

principle of statutory construction that every part of the law shall be given effect if this can be done by any fair and reasonable intendment . . . .'" Huntington Props., LLC v. Currituck Cnty., 153 N.C. App. 218, 224, 569 S.E.2d 695, 701 (2002) (quoting In re Hickerson, 235 N.C. 716, 721, 71 S.E.2d 129, 132 (1952)). "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant . . ." Hibbs v. Winn, 542 U.S. 88, 101 (2004); Burgess v. Your House of Raleigh, Inc., 326 N.C. 205, 216, 388 S.E.2d 134, 140 (1990) ("[The] statute must be construed, if possible, so as to give effect to every provision, it being presumed that the Legislature did not intend any of the statute's provisions to be surplusage." (internal quotations omitted)). Further, while the Official Comments do not equate to law, "the commentary to a statutory provision can be helpful in some cases in discerning legislative intent." Parsons v. Jefferson-Pilot Corp., 333 N.C. 420, 425, 426 S.E.2d 685, 689 (1993); see Miller v. First Bank, 206 N.C. App. 166, 171, 696 S.E.2d 824, 827-28 (2010).

Here, since the statutory language is arguably not unambiguous[5], Compare In re Miller Bros. Lumber Co., Inc., No. B-11-51405, 2012 WL 1601316, at *1-3 (Bankr. M.D.N.C. May 8, 2012) (holding a debtor in possession could avoid a security interest after a financing statement lapsed post-petition) with Mostoller, 330 B.R. at 623-24 (reaching the opposite conclusion under Tennessee's codification of the UCC), this court will interpret the statute in its entirety and in light of the Official Comments accompanying it.

Viewing the statutory provision as a whole, the key inquiry becomes the effect of the lapse set forth in the first sentence of N.C. Gen. Stat. § 25-9-515(c) and its relationship to the same provision's second sentence and to other provisions establishing priorities.  In this case, the Bankruptcy Court's opinion applied the straightforward language of the second sentence in subsection (c), ultimately concluding that the post-petition lapse of the financing statement caused the concomitant loss of the lien's perfection.  The Bankruptcy Court

---

[5] Although this court will address the issues in light of some possible ambiguity in § 25-9-515(c) and the related statutory provisions, this court is not convinced that resort to construction of an ambiguous statute is entirely necessary.  In large part, this case appears to be controlled by the respective priorities of the DIP's strong-arm position as a lien creditor and that of a secured party under circumstances where the DIP acquired its position while the secured party held a perfected security interest that subsequently lapsed.

-12-

held that "parties which fail to file UCC-3 continuation statements will lose their secured status, even when the lapse occurs post-petition."[6] (Doc. 6 at 5.) The court went on to explain the changes to the UCC and Bankruptcy laws permitting the filing of continuation statements and the requirements for a secured creditor to maintain perfection during a bankruptcy. (Id. at 5-6.)

However, the Bankruptcy Court's analysis, while applying a clear interpretation of the first part of § 25-9-515(c), did not take into consideration the priorities as provided by the UCC with respect to a secured party with a lapsed perfection and a lien creditor whose interest arose while the secured party held a perfected security interest. When viewed in conjunction with the last sentence of § 25-9-515(c), this court finds that the loss of perfected status does not necessarily affect the respective priorities when a lien creditor's interest is evaluated. For the reasons that follow, this court finds it significant that the statutory language does not provide a lien creditor with the benefit of the "deemed never to have been perfected" language of § 25-9-515(c).

---

[6] This court has been unable to find any authority to support this finding. N.C. Gen. Stat. § 25-9-515(c) addresses the effectiveness of a financing statement and perfection of the security interest; it does not mandate a complete loss of secured status.

-13-

Under former N.C. Gen. Stat. § 25-9-403(2), which was in effect until July 1, 2001, a security interest that became unperfected upon lapse would be "deemed to have been unperfected as against a person who became a <u>purchaser</u> or <u>lien creditor</u> before lapse." Revised Article 9 removed lien creditors from the list of those against whom the security interest would be "deemed never to have been perfected." <u>See</u> <u>In re Highland Constr. Mgmt. Servs.</u>, 2013 WL 3957504, at *5 ("The deletion of lien creditors from the last sentence must have meaning and that was to remove them from the deemed never perfected status of secured parties."). Trustees in bankruptcy are included within the definition of "lien creditor." N.C. Gen. Stat. § 25-9-102(a)(52). Accordingly, under the last sentence of N.C. Gen. Stat. § 25-9-515(c), a lapsed financing statement does not prevent a secured creditor from retaining priority over a junior lien creditor and, by definition, a bankruptcy trustee or DIP. Lien creditors and, by definition, DIPs, no longer receive the benefit of the "deemed never to have been perfected" position set out in § 25-9-515(c).

This conclusion is supported by the Official Comments. Although they are not binding, the Supreme Court of North Carolina has often relied on the UCC's Official Comments to help elucidate the statutory language. <u>See, e.g.</u>, <u>In re Bass</u>, ___

-14-

N.C. \_\_\_\_, \_\_\_\_, 738 S.E.2d 173, 176-77 (2013); <u>Alberti v. Manufactured Homes, Inc.</u>, 329 N.C. 727, 736, 407 S.E.2d 819, 825 (1991); <u>Boudreau v. Baughman</u>, 322 N.C. 331, 338, 368 S.E.2d 849, 855 (1988); <u>see also</u> <u>In re Price</u>, 562 F.3d at 626 ("We treat the UCC's official comments as instructive."). Official Comment 3 to N.C. Gen. Stat. § 25-9-515 states that, upon expiration, "the effectiveness of the financing statement lapses." According to that comment, however, the "deemed retroactive unperfection" set out in the final sentence of subsection (c) "applies <u>only</u> with respect to purchasers for value," and <u>not</u> "with respect to lien creditors." N.C. Gen. Stat. § 25-9-515 Official Cmt. 3 (emphasis added). Official Comment 3's second example is particularly instructive:

> Example 2: [Secured Party] holds a security interest perfected by filing. On July 1, [Lien Creditor] acquires a judicial lien on the collateral. Two weeks later, the effectiveness of the financing statement lapses. Although the security interest becomes unperfected upon lapse, it was perfected when [Lien Creditor] acquired its lien. Accordingly, notwithstanding the lapse, the perfected security interest has priority over the rights of [Lien Creditor], who is not a purchaser. <u>See</u> Section 9-317(a)(2).

Likewise, here, the post-petition lapse does not result in a "deemed never to have been perfected" status as between a secured party and a lien creditor. Upon the lapse of a financing statement, Section 25-9-515(c) provides that the

-15-

security interest "is deemed never to have been perfected as against a purchaser of the collateral for value." N.C. Gen. Stat. § 25-9-515(c). N.C. Gen. Stat. § 25-9-515(c) modifies the position of a purchaser of the collateral for value by placing it in a position as though there had never been perfection, but does not provide the same modification as to judicial lien creditors.

Priorities between competing creditors are determined by N.C. Gen. Stat. § 25-9-317 as referenced by Note 2. By failing to file a UCC-3 continuation statement, perfection lapses under § 25-9-515(c). See N.C. Gen. Stat. § 25-9-515(c). Although American Bank FSB did lose its perfected status, N.C. Gen. Stat. § 25-9-317(a)(2) provides priority to a judicial lien creditor only if it acquires its interest prior to perfection of the security interest, and nothing in the Chapter provides otherwise in the event of a lapse.

The Bankruptcy Court relied on Note 4 to the Official Comments in § 25-9-515 which specifically discusses the effect of bankruptcy on lapse. Note 4's statement that Subsection (c) "imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's bankruptcy" is a clear interpretation of the rules, particularly as to a purchaser for value. The Note goes on to provide,

-16-

however, that "if the debtor enters bankruptcy before lapse, the provisions of this Article with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result . . . ." In this case, the elevation of the Debtor's status to a DIP under 11 U.S.C. § 544 and the application of bankruptcy law[7] do not dictate a different result than that provided for by statute as between the DIP and Appellant. Because a lien creditor is not provided the benefit of the statutory provision that the security interest "is deemed never to have been perfected," Note 2 most closely applies in this case.

---

[7] A trustee's avoidance powers pursuant to § 544(a) fail to alter the result dictated by state law. A debtor in possession holds the same avoidance powers as a trustee. 11 U.S.C. § 1107(a). Under § 544(a)(1), a trustee can avoid a security interest to the same extent a lien creditor could at the commencement of the bankruptcy case. 11 U.S.C. § 544(a)(1) ("The trustee shall have, as of the commencement of the case, . . . the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by – (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien . . ."). Appellant American Bank was properly perfected at the time of filing when the DIP's judicial lien powers arose. Moreover, although under § 544(a)(3) a trustee can avoid a security interest to the same extent as a bona fide purchaser of real property, the present case does not involve real property and thus this section is inapplicable. Accordingly, notwithstanding the lapse, Appellant's security interest remained effective as to existing lien creditors, including Debtor.

Because section 25-9-515(c) does not modify the priority scheme for judicial lien holders by its "deemed" language, Appellant American Bank's security interest, even upon lapse, still retains priority over the DIP's judicial lien. See In re Highland Constr. Mgmt. Servs., 2013 WL 3957504; Mostoller, 330 B.R. at 623-24 ("Because trustees in bankruptcy are armed with the rights of lien creditors under § 544(a) and are not purchasers for value, the fact that three of the [secured creditor's] UCC-1 Financing Statements lapsed during the pendency of the bankruptcy case does not change the priority scheme as between [the Chapter 7 trustee] and the [secured creditor]." (footnotes omitted)).

Based on the analysis set forth above, this court will only briefly address Debtor's arguments regarding the "Freeze Rule" and the historical interplay between the Bankruptcy Code and the UCC. It is true that the automatic stay no longer enjoins creditors from filing continuation statements during a bankruptcy case, see 11 U.S.C. § 362(b)(3), and that North Carolina's UCC no longer tolls the time for filing a continuation statement during a debtor's insolvency proceeding. N.C. Gen. Stat. § 25-9-515 Official Cmt. 4. Revised Article 9 "imposes a new burden on the secured party: to be sure that a financing statement does not lapse during the debtor's

-18-

bankruptcy." Id. If the debtor enters bankruptcy before lapse, however, "the provisions of [Article 9] with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition)." Id. Under North Carolina law, Appellant's failure to file a continuation statement did not result in its loss of priority as against the DIP's lien arising under 11 U.S.C. § 544(a)(1), and neither party nor this court has identified any bankruptcy law requiring a contrary result, regardless of the date upon which the status of the respective parties is determined.

## IV. CONCLUSION

In summary, this court holds that under N.C. Gen. Stat. §§ 25-9-515(c) and 317(a)(2), American Bank FSB's security interest has priority over the debtor in possession's interest even though perfection of the security interest lapsed following the filing of the Bankruptcy Petition.

For the reasons stated above, **IT IS HEREBY ORDERED** that the Order of the Bankruptcy Court (Doc. 3-1) denying Appellant's Motion for Adequate Protection and to Modify the Stay is **REVERSED** and that this case is **REMANDED** to the Bankruptcy Court

-19-

for further proceedings consistent with this Memorandum Opinion and Order.[8]

This the 23rd day of October, 2013.

*William L. Osteen, Jr.*
United States District Judge

---

[8] The Bankruptcy Court, and this court, have only addressed the relationship between the DIP and American Bank FSB. The record before this court does not address or establish the status, relationship, or possible priorities between any other creditors or parties and American Bank FSB. Therefore, this order is limited in scope and the case is remanded for further proceedings consistent with this opinion.

-20-